NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DONALD WILLIAM CARLEY, *Appellant*.

No. 1 CA-CR 21-0321
FILED 6-7-2022

Appeal from the Superior Court in Mohave County
No. S8015CR201901005
The Honorable Billy K. Sipe, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Mohave County Attorney's Office, Kingman
By Jacob Cote
*Counsel for Appellee*

Robbins & Curtin, PLLC, Phoenix
By Joel B. Robbins, Jesse Showalter
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

¶1         Donald Carley appeals the superior court's denial of his petition to clear his arrest record and indictment relating to a charge for theft, a class three felony.  Because Carley has not shown an abuse of discretion, we affirm.

## BACKGROUND

¶2         In June 2019, Carley was indicted for fraudulent schemes and artifices, solicitation of fraudulent schemes and artifices, prohibited acts (improper influence of public officer or employee), and theft (value over $4,000) arising from various acts allegedly committed during his employment as a supervisor for Bullhead City.  The first three charges arose from an incident in which Carley had a personal item delivered to his workplace to avoid a delivery charge.  This appeal concerns only the fourth charge, theft of property.

¶3         The theft charge stemmed from three different materials allegedly stolen by Carley.  First, he allegedly removed a large pipe that was located at a fire station.  Second, he allegedly made steel rails for his personal trailer to haul work equipment, which he created from steel scraps he took from work.  Third, he allegedly used City resources to have metal signs made for him and placed the signs on his property.

¶4         In July 2020, the court granted the State's motion to dismiss the charges without prejudice.  Carley then filed a petition to clear his arrest record and indictment under A.R.S. § 13-4051:

> A. Any person who is wrongfully arrested, indicted or otherwise charged for any crime may petition the superior court for entry on all court records, police records and any other records of any other agency relating to such arrest or indictment a notation that the person has been cleared.

B. After a hearing on the petition, if the judge believes that justice will be served by such entry, the judge shall issue the order requiring the entry that the person has been cleared on such records, with accompanying justification therefor, and shall cause a copy of such order to be delivered to all law enforcement agencies and courts. The order shall further require that all law enforcement agencies and courts shall not release copies of or provide access to such records to any person except on order of the court.

¶5        The superior court held an evidentiary hearing on Carley's petition. On the theft charge, the court heard testimony on the value of the allegedly stolen items. Originally, the State had alleged the pipe had a value of $9,800, but a former fire department employee tasked with finding someone to remove the pipe testified that he informed the police during the investigation that the pipe had no value and the department would have incurred costs to remove it, while the city engineer testified that he estimated the pipe was worth $200. The State alleged the trailer rails had a value of $118. The court heard testimony that the leftover steel scraps Carley used for the rails usually went to a recycler, and sometimes other uses were found for the scraps. As for the signs, the court heard testimony that 10 signs made at the City's sign shop, most of which were in "almost brand-new" condition, were removed from Carley's residence. Testimony also revealed that two similar signs were found at Carley's ranch property.

¶6        After the hearing, the court granted the petition as to the charges of fraudulent schemes and artifices, solicitation of fraudulent schemes and artifices, and prohibited acts, finding no legal or factual basis for the charges. The court denied Carley's petition as to theft, however, finding that while there was no factual or legal basis for the theft charge regarding the pipe or rails, it was "not wrongful for the State to charge him with theft regarding these signs." Following the court's denial, Carley asked, "whether or not [the court] might have inherent authority . . . to somehow make a notation that under the State's evidence it could be no more than a Class 1 misdemeanor." The court responded,

> [I]t's just a general theft charge. I realize it's charged as a Class 3 felony, but there's nothing in the indictment that listed specifically each item. If the indictment listed each specific item that they charged Mr. Carley with, I could see entering an order that would be specific as to each item. As indicated earlier, I don't see where I have the authority, nor do I think

there's any mechanism, that would allow me to redesignate counts that are dismissed.

¶7        Carley filed a motion for reconsideration, which the court denied.  He also filed a second petition to clear the remaining theft charge, asserting for the first time that the State had presented an estimated value of $600 for the signs in the grand jury proceeding and therefore did not exceed the $1,000 threshold for designating theft as a felony.  After the court denied the second petition, Carley timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).  *See State v. Mohajerin*, 226 Ariz. 103, 106, ¶ 7–8 (App. 2010) (noting that petitions under § 13-4051 initiate "a special proceeding that is in the nature of a civil action").

**DISCUSSION**

¶8        Carley argues the superior court erred in denying his petition to clear his arrest record and indictment on the theft charge because there was no factual basis to support designating the charge as a felony.  He argues the State alleged the pipe's value was over $9,000 in order to transform the *misdemeanor* theft charge into a *felony* charge, when the State knew the pipe was worthless and did not belong to the City.  According to Carley, because the value of the signs was approximately $600, there was no factual support for the State to charge him with theft as a felony.  *See* A.R.S. § 13-1802(G) (designating theft of property or services with a value of $1,000 or more as a felony, and theft of property or services with a value of less than $1,000 as a misdemeanor).

¶9        We review a ruling on a § 13-4051 petition for an abuse of discretion and defer to any factual findings.  *See Mohajerin*, 226 Ariz. at 108, ¶ 18.  At the hearing on Carley's petition, the superior court explained that it denied Carley's petition regarding the theft charge because there was evidence that Carley used public labor and resources to make the signs without proper authorization from the City.  Because it was a general theft charge, and there was some factual basis to the charge, the court further explained there was no mechanism for it to redesignate the dismissed theft count as a misdemeanor.

¶10        Carley argues that the plain language of § 13-4051 and its underlying policy authorized the court to grant relief regarding the remaining felony theft charge.  He does not challenge the court's conclusion that there was a factual basis for the theft charge.  Rather, Carley argues the court erred because it based its decision on the incorrect belief that it did not have discretion under § 13-4051 to grant the petition.   *See Mohajerin*,

226 Ariz. at 108, ¶ 18 ("When a trial court predicates its decision on an incorrect legal standard, however, it commits an error of law and thereby abuses its discretion."). Carley's position fails for several reasons.

**¶11** First, nothing in the evidentiary record provides a definitive value of the signs that Carley admitted he wrongfully obtained. Carley repeatedly references a $600 value in his appellate briefing; however, that value came from a detective's testimony at the grand jury proceedings. Although the superior court agreed to review the grand jury transcript after counsel asked the court to take judicial notice, the transcript is not part of the record before us. Carley included an excerpt of the transcript with his opening brief, but that does not make it part of the official appellate record. *See* ARCAP 11(b) ("A party that wants the record on appeal to include a transcript of an oral proceeding that was not previously filed as a part of the official record must order the transcript[.]"). We therefore decline to consider it. And even if the $600 estimated value accurately reflects the grand jury transcript, Carley cites no authority suggesting the State would be bound by that estimate if the case proceeded to trial.

**¶12** Second, nothing in the language of § 13-4051 supports Carley's position that the superior court had the authority to essentially grant the petition as to felony theft, but then add a notation to the effect that the arrest records and indictment for misdemeanor theft would not be cleared. When a party requests clearance under § 13-4051, the request must be tied to the specific allegations or charges as alleged in the arrest and charging documents. *See* A.R.S. § 13-4051(A) (authorizing petition seeking clearance "on all court records, police records and any other records of any other agency *relating to such arrest or indictment*" (emphasis added)). Stated differently, the statute provides for an all or nothing remedy as to each charge, and it is not our role to question the wisdom of the legislature in crafting the scope of the remedy. *See Folk v. City of Phoenix*, 27 Ariz. App. 146, 150 (1976) (noting questions as to the wisdom of a legislative act must be left to the legislative branch, not the courts).

**¶13** Third, if the theft charge proceeded to trial, the jury would be tasked with deciding whether a theft occurred, and if so, it would determine the value of the property taken. As noted, nothing in this record conclusively establishes what that value would be.

**¶14** Finally, Carley cites no authority for the proposition that a court may grant a petition to clear an arrest record or indictment when a factual basis exists supporting the allegations contained in those records. He relies on *Mohajerin* to suggest that the word "wrongfully" as it appears

in § 13-4051 should be interpreted broadly, such that a court would have discretion to grant relief even if there are some colorable facts relating to the charge.

**¶15** Carley's reliance on *Mohajerin* is misplaced. In that case, the defendant was arrested and charged with sexual assault and threatening or intimidating, where his wife was the alleged victim. 226 Ariz. at 104–105, ¶ 2. After she recanted, the charges were dismissed. *Id.* at 105. Following dismissal, the defendant filed a § 13-4051 petition, arguing he was wrongfully arrested and charged because he was factually innocent. *See id.* at 105, 109, ¶¶ 3, 19. On appeal, this court affirmed the denial of his petition, finding that "any determination that [the defendant] was factually innocent would be unsupported by and contrary to the record," because at the evidentiary hearing, his wife did not recant the factual content of her allegations. *Id.* at 114, ¶¶ 23, 24. While we noted that a defendant is not limited to proving he was *unlawfully* arrested or charged to establish its wrongfulness, we concluded that the defendant did not show he was wrongfully arrested and indicted because he failed to establish that he was factually innocent. *Id.* at 113–15, ¶¶ 22, 24. Similarly, Carley does not challenge the superior court's conclusion that there was a factual basis for the theft charge; thus, he has failed to establish that the court abused its discretion.

## CONCLUSION

**¶16** We affirm the superior court's denial of Carley's petition to clear his arrest record and indictment.

