NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

MICHAEL SCHNEIDER, *Petitioner/Appellee,*

*v.*

LESTIE SCHNEIDER, *Respondent/Appellant.*

No. 1 CA-CV 21-0382 FC
FILED 2-16-2023

Appeal from the Superior Court in Navajo County
No. S0900DO201300205
The Honorable Ralph E. Hatch, Judge (Retired)

**AFFIRMED**

COUNSEL

Alford Law PLLC, Flagstaff
By Elliot Alford
*Counsel for Respondent/Appellant*

Riggs, Ellsworth & Porter, P.L.C., Show Low
By Michael R. Ellsworth
*Counsel for Petitioner/Appellee*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

¶1          Lestie Schneider ("Wife") appeals from a post-decree order distributing funds from the sale of the parties' rental property.  For the following reasons, we affirm.

## BACKGROUND

¶2          After 14 years of marriage, Michael Schneider ("Husband") petitioned for divorce from Wife.  At the time of the petition, the parties owned, among other property, a mortgage-free rental house in Boulder City, Nevada.  In January 2014, following a trial, the superior court entered its decree of dissolution.  As pertinent here, the decree allocated to Husband all debts that were in his name, and to Wife all debts in her name.

¶3          The decree also confirmed the parties' agreement that the house would be listed for sale and that Wife would be given a 25% "interest in the proceeds upon the sale."[1]  Husband was ordered to sell the house upon termination of a then-existing lease, and Wife was awarded $300 per month in spousal maintenance, which would terminate upon sale of the house.  The decree did not address which party or parties should bear pre-sale expenses.

¶4          After more than four years on the market, the court ordered a substantial reduction in the listing price and the house was ultimately sold in 2020 for $556,000.  The parties then moved for distribution of the sale proceeds and the court held an evidentiary hearing ("2021 hearing").  As pertinent here, the issues considered were whether the parties should (1) proportionately share financial responsibility for upkeep and maintenance expenses incurred between 2014 and 2020 ("upkeep expenses") as well as

---

[1]          Although the record is somewhat unclear, the parties do not seem to dispute that Husband's son owned a 25% interest in the house.  Whether the son was entitled to any proceeds from the sale was not at issue in the superior court so we do not address it on appeal.

selling costs, (2) equally share responsibility for a previously unknown debt (loan) reduced to judgment that became a lien against the house (the "judgment lien"), and (3) equally share the legal fees Husband incurred in California to dispute the judgment lien ("California legal fees"). Husband claimed Wife was partially responsible for these expenses and they should be deducted from her share of the sale proceeds. Wife countered that she was not responsible for any of these expenses and was therefore entitled to 25% of the gross proceeds from the sale of the house.

¶5 The court interpreted the decree as requiring Wife to pay for her proportionate share of each expense and thus ordered her to pay 25% of the upkeep expenses, realtor fees, and closing costs, plus 50% of the judgment lien and California legal fees. The court reasoned in part that no one anticipated it would take so long to sell the house, but the parties knew there would be costs involved in maintaining the property and selling it. Recognizing that the decree did not address whether these expenses would be shared, the court found it would be inequitable to have Husband bear them "alone after all these years." The court also explained that allocating all the expenses to Husband would be unfair because Wife caused significant delay in selling the house because she blocked Husband's efforts to lower the price.

¶6 After finding that Wife's share of the gross sale proceeds was $139,126.66, the court calculated her net disbursement as $45,234.68. Wife timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(2).

**DISCUSSION**

¶7 Wife challenges several portions of the order distributing the sale proceeds. She first argues the superior court improperly relied on its own findings in prior minute entries and orders when it ordered her to pay 25% of the $17,000 upkeep expenses. She then contests the court's characterization of the judgment lien as community debt and the requirement that she pay 50% of the lien, asserting it was Husband's separate property and was attributed to him in the decree. Wife also contests the court's order requiring her to pay 50% of the California legal fees, asserting the court misapplied a separate fee-sharing agreement.

¶8 When apportioning community property as part of a dissolution proceeding, "the superior court has broad discretion to achieve an equitable division, and we will not disturb its allocation absent an abuse of discretion." *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007). An abuse of discretion occurs if the court "commits an error of law in the

process of exercising its discretion." *Id.* We view the evidence in the light most favorable to sustaining the court's ruling, and we will sustain it if reasonably supported by the evidence. *Id.* We review issues of law de novo. *Nielson v. Patterson*, 204 Ariz. 530, 531, ¶ 5 (2003).

## A.    Reliance on Prior Findings

**¶9**        In calculating the offset for Husband's upkeep expenses, the court referenced findings from its previous orders. Citing a November 2014 order, which stated Husband had paid $17,000 in taxes, utilities and repairs for the house, the court ordered Wife to pay 25% of that $17,000 expense. In addressing the judgment lien, the court cited an October 2018 order, explaining that the previously unknown loan (which later became the judgment lien) was a community debt because it was incurred during the marriage. The court reaffirmed that ruling and ordered Wife to pay 50% of the judgment lien.

**¶10**        Wife argues the court erred by citing to findings of fact and conclusions of law it had made previously "without independent evidence [being] presented." She asserts that the court "*seems to have applied*" issue preclusion or claim preclusion in addressing the upkeep expenses and the judgment lien. For several reasons, we disagree.

**¶11**        A court may take judicial notice of its own records to establish the necessary facts at any stage of the proceedings. *In re Sabino R.*, 198 Ariz. 424, 425, ¶ 4 (App. 2000); Ariz. R. Evid. 201. Here, the superior court did not err by referencing prior minute entries in its findings of facts and conclusions of law.

**¶12**        As to claim and issue preclusion, we agree with Husband that neither doctrine applies in this case. *See Norriega v. Machado*, 179 Ariz. 348, 351 (App. 1994) (explaining claim preclusion); *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986) (explaining issue preclusion). The superior court referenced the 2014 order as part of its finding that the $17,000 was a portion of the upkeep expenses, and the finding was based on Husband's testimony at a 2014 hearing. Wife had the opportunity to cross-examine Husband on this issue at the 2014 hearing, and nothing in the record suggests Wife was precluded from disputing the $17,000 amount at the 2021 hearing. On appeal, Wife does not cite any evidence disputing this amount; instead, she repeatedly asserts that the court should not have considered the prior finding.

**¶13**        Wife questions the superior court's reliance on the $17,000 figure because it was based solely on Husband's testimony at the 2014

hearing. We view the evidence, however, in the light most favorable to sustaining the court's ruling. *See Boncoskey*, 216 Ariz. at 451, ¶ 13. Moreover, the court did not abuse its discretion in taking the testimony at face value, especially considering Wife had the right to cross-examine Husband on the issue at both the 2014 and 2021 hearings. *See Aranda v. Cardenas*, 215 Ariz. 210, 219, ¶ 34 (App. 2007) (explaining that self-serving testimony is not barred, but rather a "matter of credibility for the fact-finder").

**¶14**     Further, the court did not rely on claim or issue preclusion when it found that the judgment lien was community debt. Instead, the court considered the evidence and arguments Wife presented at trial, along with the preexisting record, and determined Wife shared responsibility for the judgment lien. Contrary to Wife's contention, the court did not simply defer to its prior ruling; instead, it reaffirmed its ruling after considering the new evidence and arguments presented at the 2021 hearing. Thus, Wife has not established that the court abused its discretion in referencing its 2014 and 2018 orders.

### B.     Pretrial Notice

**¶15**     Wife also argues the court erred in considering the 2014 and 2018 orders because Husband's pretrial notice before the 2021 hearing was insufficient under Arizona Rule of Family Law Procedure ("ARFLP") 76.1. Among other things, ARFLP 76.1 requires parties to include in their pretrial statements "detailed and concise statements of contested issues of fact and law." ARFLP 76.1(f)(6). Wife argues Husband's pretrial statement was insufficient because even though he referenced the 2014 order, he did not specifically say he would use the order to prove $17,000 in upkeep fees. Similarly, Wife asserts that Husband did not indicate in his pretrial statement that he would use the 2018 order to prove that the judgment lien was community debt.

**¶16**     Wife's arguments on this point are not persuasive. In his pretrial statement, Husband indicated that he had "expended $82,587.00 in maintaining the [house] prior to the sale." In his exhibit list, Husband included the 2014 order, which stated that he had incurred $17,000 in upkeep expenses. Also included in the exhibit list was the 2018 order, which addressed the creditor from California who later imposed the judgment lien. Given the nature of the issues and the inclusion of these orders as exhibits, Wife could not have been surprised. *See Carlton v. Emhardt*, 138 Ariz. 353, 355 (App. 1983) (noting that one purpose of the pretrial statement is to prevent surprise to a party).

¶17　　　　Moreover, Wife fails to explain how these purported errors prevented her from adequately preparing for trial or otherwise resulted in prejudice. *See Fuentes v. Fuentes*, 209 Ariz. 51, 57, ¶ 27 (App. 2004) (appellate courts will not disturb an evidentiary ruling "absent both a clear abuse of discretion and resulting prejudice"). The court repeatedly heard Wife's blanket objection to any offset from the gross proceeds. Wife fully explained her position concerning the judgment lien by denying that she signed for it or knew of its existence before 2018. And she had the opportunity to cross-examine Husband on both issues. Wife has not shown the court erred.

### C.　　Judgment Lien

¶18　　　　In allocating to Wife responsibility for half of the judgment lien, the court reasoned that she had not presented any evidence at the 2021 hearing "to overcome the presumption of community debt." Wife contends this was error, asserting that the decree required Husband to bear sole responsibility for the judgment lien as his separate debt.

¶19　　　　We review de novo the interpretation of a decree, using "the general rules of construction for any written instrument." *Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 11 (App. 2007). A decree is ambiguous "when [its language] can reasonably be construed to have more than one meaning." *In re Estate of Lamparella*, 210 Ariz. 246, 250, ¶ 21 (App. 2005). We interpret the decree based on the original context as to equity, and in harmony with its other provisions. *See Cohen,* 215 Ariz. at 66, ¶ 12.

¶20　　　　The decree states that "Husband shall be financially responsible for[,] . . . and shall hold []Wife harmless therefrom[,] . . . [a]ny and all personal debt(s) in his name . . . ." The decree also contained a reciprocal provision allocating to Wife all personal debts in her name. Husband testified that the loan underlying the judgment lien was incurred during the marriage.[2]

---

[2]　　　　Given the lack of record documentation for the loan, the superior court appears to have concluded that the loan was incurred during the marriage based solely on Husband's testimony. Wife argues the court abused its discretion in finding that the loan was incurred during the marriage, but she has waived that argument because it was first raised in her reply brief. *See Dawson v. Withycombe*, 216 Ariz. 84, 111, ¶ 91 (App. 2007).

**¶21**        Husband's testimony reasonably supports the court's findings that the loan was taken out during the marriage and unintentionally omitted from the decree.  To be sure, the decree allocated to Husband all personal debts solely in his name; it is undisputed that the loan was in his name alone.  But read in context with related provisions of the decree, which specifically name and allocate other debts, the decree only contemplates the distribution of *known* debts between the parties.  The court expressly stated in the October 2018 order that the debt was proven to be community property and if it had been disclosed before the decree, it would have been a community debt.  Because the decree did not account for unknown debts, the separate debt provision does not apply and the court was not required to modify the decree in order to allocate the debt.  *See Jensen v. Beirne*, 241 Ariz. 225, 229, ¶ 14 (App. 2016) (recognizing that a court retains broad jurisdiction to enforce a divorce decree through its equitable powers "to do full and complete justice between the parties").

**¶22**        Wife also argues the court erred in allocating to her a portion of the judgment lien because it was inequitable.  The court has broad discretion in apportioning community debts.  *See Boncoskey*, 216 Ariz. at 451, ¶ 13.  We consider the evidence in the light most favorable to upholding the court's apportionment and will affirm if the evidence reasonably supports it.  *Id.*  Debts incurred during a marriage are presumed to be community debts.  *Schlaefer v. Fin. Mgmt. Servs., Inc.*, 196 Ariz. 336, 341, ¶ 18 (App. 2000).  A spouse seeking to avoid the debt must rebut that presumption by clear and convincing evidence.  *Id.*

**¶23**        Wife contends it is inequitable to hold her responsible for half of the judgment lien given that there was no evidence she had any knowledge of the loan.  But the court found credible Husband's testimony that he was also unaware of the loan.  When a community debt is omitted from a decree, A.R.S. § 25-318(D) provides for the automatic imposition of a tenancy in common for community property.  Here, Wife bore the burden of overcoming this presumption by clear and convincing evidence, and the court found she did not do so.  The loan was not Husband's separate debt under the decree; therefore, it was not subject to the decree's assignment to Husband of "any and all personal debt(s) in his name."  And because community debt is generally allocated equally between the parties, Wife has not shown the court abused its discretion in allocating 50% of the judgment lien to Wife.  *See Jankowski v. Jankowski*, 114 Ariz. 406, 407 (App. 1977) (stating that community debt is generally allocated equally between the parties).

### D.    California Legal Fees

¶24        The court divided the attorneys' fees related to Husband's challenge to the judgment lien equally between the parties, calculating Wife's share as $5,968.50.  The court supported this determination by referencing an agreement between the parties to share attorneys' fees that was acknowledged at a February 2019 hearing.  However, the agreement from that hearing concerned the hiring of Nevada counsel for a separate issue related to the house and not with hiring the California attorney that Husband used to contest the judgment lien. The court's ruling is nonetheless sustainable because the attorneys' fees were undertaken in support of the parties' marital asset. *See Leflet v. Redwood Fire & Cas. Ins. Co.*, 226 Ariz. 297, 300, ¶ 12 (App. 2011) (holding that appellate courts may affirm the superior court's ruling on any basis supported by the record); *see also Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶ 19 (App. 2017).  Had Husband succeeded in his challenge of the judgment lien, both Husband and Wife would have benefited financially.  Wife has not established that the court abused its discretion in dividing the California legal fees.

### CONCLUSION

¶25        We affirm the superior court's order distributing the proceeds of the rental house.  In our discretion, we deny Wife's request for attorneys' fees under A.R.S. § 25-324.  As the successful party on appeal, Husband is awarded taxable costs subject to compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA

8